**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**MATTHEW JAMES MCKINNEY,**

    **Petitioner,**

**v.**                                              **Case No. 3:20cv5400-LC/MAF**

**MARK INCH,**

    **Respondent.**
_____/

## **REPORT AND RECOMMENDATION**

On April 15, 2020, Petitioner Matthew James McKinney, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On October 2, 2020, Respondent filed a motion to dismiss the petition, with exhibits. ECF No. 10. Petitioner has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 9.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. The pleadings and attachments before the Court show the petition should be dismissed as untimely. *See* Rule 4, R. Gov. § 2254 Cases (authorizing

dismissal "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" in federal court).

## Procedural Background

Petitioner Matthew James McKinney challenges his conviction dated August 9, 2003, and sentence imposed February 4, 2004, by the First Judicial Circuit, Escambia County, Florida, following a jury trial in case number 2002-CF-1904.  ECF No. 1 at 1-2; Ex. A at 1-2 (indictment), 162 (verdict); Ex. B (transcript of jury trial).[1]  In particular, on August 9, 2003, the jury found McKinney guilty of second degree murder with a firearm (a lesser included offense), a second degree felony in violation of section 782.04(2) and 775.087, Florida Statutes, and tampering with evidence, a third degree felony in violation of section 918.13(1)(a), Florida Statutes.  Ex. A at 162; Ex. B at 1291-94.  On February 4, 2004, the trial court sentenced him to 253.575 months in prison on the murder count and time served on the other count. Ex. A at 333-38 (judgment and sentence), 273-330 (transcript of sentencing hearing).

McKinney appealed his conviction and sentence to the First District Court of Appeal (First DCA), assigned case number 1D04-1135.  Ex. C

---

[1] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's motions to dismiss, ECF No. 10.

(Initial Brief).  The State filed an Answer Brief.  Ex. D.  The court heard oral argument on July 28, 2005, and on August 3, 2005, the court affirmed the case without a written opinion.  Ex. E; McKinney v. State, 907 So. 2d 1174 (Fla. 1st DCA 2005) (table).  The mandate issued August 19, 2005.  Ex. F.  Thereafter, McKinney filed a motion for rehearing or clarification and request for a written opinion, Ex. G, and a motion to consider the motion for rehearing or clarification and request for written opinion, Ex. H.  By order on September 15, 2005, the First DCA denied both motions.  Ex. I.  McKinney did not seek further review in the Florida Supreme Court or the U.S. Supreme Court.  *See* ECF No. 1 at 3-4; ECF No. 10 at 3.

On October 17, 2006, McKinney filed a motion to correct sentence pursuant to Florida Rule of Criminal Procedure 3.800(a).  Ex. J at 1-21 (exclusive of attachments).  By order rendered March 13, 2007, the state trial court denied the motion.  Ex. J at 38-41 (exclusive of attachments).  McKinney appealed to the First DCA, assigned case number 1D07-1967, and no briefs were filed.  Ex. J at 48-49; Ex. K.  On October 18, 2007, the court affirmed the case without a written opinion.  Ex. L; McKinney v. State, 967 So. 2d 203 (Fla. 1st DCA 2007) (table).  The mandate issued November 15, 2007.  Ex. M.

In the meantime, on March 10, 2007, McKinney filed a petition for writ of habeas corpus in the First DCA, alleging ineffective assistance of appellate counsel, which was assigned case number 1D07-1355. Ex. N. On April 4, 2007, the court denied the petition on the merits. Ex. O; McKinney v. State, 957 So. 2d 1200 (Fla. 1st DCA 2007). McKinney filed a motion for rehearing and clarification, Ex. P, and a motion for rehearing en banc, Ex. Q. The First DCA denied the motions by orders entered May 10, 2007, Ex. R; June 6, 2007, Ex. S; and June 15, 2007, Ex. T.

On August 17, 2007, McKinney filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Ex. U at 1-40. He filed an amended motion on August 20, 2007. *Id.* at 41-79. By order on February 13, 2008, the state post-conviction trial court struck both motions as facially insufficient with leave to amend. *Id.* at 80-81. On May 29, 2008, McKinney filed a second amended Rule 3.850 motion. *Id.* at 87-132. The state post-conviction trial court directed the State to respond to Grounds 5, 7, 10, and part of Ground 6. *Id.* at 133. The State filed a response indicating these claims required an evidentiary hearing. *Id.* at 134. McKinney filed a motion for appointment of counsel. *Id.* at 135-37. By order dated January 2, 2009, the court granted an evidentiary hearing on Grounds 5, 7, and 10, and part of Ground 6. *Id.* at 138. The court also appointed counsel for

McKinney by order on January 12, 2009. *Id.* at 139-41. On May 11, 2009, McKinney filed a supplemental second amended Rule 3.850 motion raising an additional ground. Ex. U at 142-47.

Evidentiary hearings occurred August 7, 2009, and January 5, 2010. Ex. U at 151-226, 228-58. On April 12, 2010, the state post-conviction trial court rendered an order denying the second amended Rule 3.850 motion and the supplemental second amended Rule 3.850 motion. Ex. U at 259-89 (exclusive of attachments). McKinney filed a pro se motion for rehearing, *id.* at 504-05, which the court granted but denied relief by order on May 17, 2010, *id.* at 506-14. McKinney appealed to the First DCA and filed a pro se Initial Brief in case number 1D10-3424. Ex. V. The State did not file an Answer Brief. *See* Ex. W. On August 11, 2011, the First DCA per curiam affirmed the case without a written opinion. Ex. X; McKinney v. State, 75 So. 3d 828 (Fla. 1st DCA 2012) (table). McKinney filed a motion for rehearing, Ex. Y, which the First DCA denied by order on September 27, 2011, Ex. Z. McKinney filed an amended motion for rehearing, Ex. AA, which the First DCA denied by order on November 30, 2011, Ex. BB. The mandate issued December 16, 2011. Ex. CC.

In the meantime, on September 15, 2011, McKinney filed another motion to correct illegal sentence. Ex. DD at 1-2. By order rendered October

10, 2011, the state trial court denied the motion. *Id.* at 3-6. McKinney filed a motion for rehearing, *id.* at 7-9, which the court denied by order on November 7, 2011, *id.* at 10. McKinney appealed to the First DCA and filed a pro se Initial Brief in case number 1D11-6764. Ex. EE. The State did not file an Answer Brief. *See* Ex. FF. On September 10, 2012, the First DCA affirmed the case without a written opinion. Ex. GG; McKinney v. State, 97 So. 3d 828 (Fla. 1st DCA 2012) (table). McKinney filed a motion for extension of time to file a motion for rehearing, Ex. HH, which the court denied by order on October 11, 2012, Ex. II. The mandate issued October 19, 2012. Ex. JJ.

On September 8, 2016, McKinney filed another petition for writ of habeas corpus in the First DCA, assigned case number 1D16-4088. Ex. KK. On October 10, 2016, the First DCA dismissed the petition with a citation to Baker v. State, 878 So. 2d 1236 (Fla. 2004). Ex. LL; McKinney v. State, 201 So. 3d 807 (Fla. 1st DCA 2016).

On March 24, 2019, McKinney filed a petition for writ of habeas corpus in the state trial court. Ex. MM at 20-32. On May 14, 2019, the state trial court denied the petition, finding it an untimely and successive Rule 3.850 motion. *Id.* at 33-35 (exclusive of attachments). McKinney appealed, *id.* at 76-78, and the First DCA ordered him to show cause why the appeal,

assigned case number 1D19-2262, should not be dismissed as untimely, Ex. NN. McKinney filed a response, Ex. OO, and an amended notice of appeal, Ex. PP. By order on August 14, 2019, the First DCA dismissed the appeal. Ex. QQ; McKinney v. State, 277 So. 3d 1010 (Fla. 1st DCA 2019). The mandate issued September 11, 2019. Ex. RR.

In the meantime, on May 1, 2019, McKinney sent a letter to the state trial judge. Ex. SS. On October 7, 2019, the state court entered an order treating the letter as a Rule 3.850 motion, which it found untimely and successive. Ex. TT. McKinney did not appeal. *See* Ex. UU.

As indicated above, on April 15, 2020, McKinney filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. ECF No. 1. Respondent filed a motion to dismiss the petition, with exhibits. ECF No. 10. McKinney has not filed a reply, although he was given the opportunity to do so. *See* ECF No. 9.

## Analysis

Under the AEDPA, there is a one-year limitations period for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). The period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). Later dates which may commence the period are the date on which an

unconstitutional impediment that prevented the applicant from filing is removed; the date on which the constitutional right asserted was recognized by the U.S. Supreme Court and made retroactive on collateral review; and the date on which the factual predicate for the claim could have been discovered with due diligence. *Id.* § 2244(d)(1)(B)-(D). The limitations period is tolled for the time during which a "properly filed" application for relief is pending in state court. *Id.* § 2244(d)(2). The time may be equitably tolled, but "only if a petitioner establishes *both* extraordinary circumstances and due diligence." Diaz v. Sec'y for Dep't of Corr., 362 F.3d 698, 702 (11th Cir. 2004).

In this case, as indicated above, McKinney appealed his conviction and sentence, and the First DCA per curiam affirmed the case, without a written opinion, on August 3, 2005. Ex. E; McKinney v. State, 907 So. 2d 1174 (Fla. 1st DCA 2005) (table). McKinney sought rehearing, clarification, and a written opinion, but the First DCA denied those requests by order on September 15, 2005. Exs. G, H, I. McKinney did not seek further review, and his conviction became final for federal habeas purposes on December 14, 2005, upon expiration of the ninety-day period for seeking certiorari review in the U.S. Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(A); *see also, e.g.*, Nix v. Sec'y for Dep't of Corr., 393 F.3d 1235, 1236-37 (11th Cir. 2004);

Kaufman v. United States, 282 F.3d 1336, 1338 (11th Cir. 2002). He had one year thereafter, or until December 14, 2006, to file his federal habeas petition, absent tolling activity. *See, e.g.*, Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1218 (11th Cir. 2017) (explaining Cadet's conviction became final "on December 23, 2002, when the time for seeking a writ of certiorari from the United States Supreme Court expired" and "[o]n that same date, Cadet's one-year statute of limitations for filing a federal habeas petition began to run," citing 28 U.S.C. § 2244(d)(1)(A)); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (calculating limitations period according to "anniversary method"); Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (applying anniversary date analysis).

As indicated above, on October 17, 2006, McKinney filed a Rule 3.800(a) motion in state court. At this point, 306 days in the AEDPA limitations period had run. McKinney's AEDPA time remained continuously tolled through the filing of his March 2007 petition for writ of habeas corpus; the filing of his August 2007 Rule 3.850 motion, amended motions, and proceedings thereon; as well as the filing of his September 2011 Rule 3.800 motion and his appeal from the denial of that motion. That appeal concluded October 19, 2012, upon issuance of the mandate. Ex. JJ. The AEDPA limitations period thus started again on October 20, 2012, and ran for the

remaining 59 days untolled, until it expired on December 18, 2012.  Indeed, McKinney did not file anything else in state court for almost four years, until September 8, 2016, when he filed another petition for writ of habeas corpus in the First DCA.  Ex. KK.  By this time, however, his AEDPA one-year limitations period had already expired and, therefore, this filing, or anything filed thereafter, could not toll that limitations period.  *See, e.g.*, Hutchinson v. State of Fla., 677 F.3d 1097, 1098 (11th Cir. 2012) ("In order for that § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run."); Tinker v. Moore, 255 F.3d 1331, 1335 n.4 (11th Cir. 2001), *cert. denied*, 534 U.S. 1144 (2002) ("We remind petitioners that a properly and timely filed petition in state court only tolls the time remaining within the federal limitation period."); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").  Accordingly, McKinney's § 2254 petition is untimely.

As Respondent indicates, McKinney appears to recognize his § 2254 petition is untimely.  *See* ECF No. 10 at 10; ECF No. 1 at 18-19.  In particular,

McKinney asserts, in response to the "Timeliness of Petition" inquiry, that "[a] Constitutional violation has resulted in the conviction of Petitioner, who is actually innocent." ECF No. 1 at 19. As relief, McKinney requests, among other things, that the Court grant an evidentiary hearing for him to prove his claims and to "prove to this Court Petitioner is actually innocent of all charges and the State built entire case off [Jonathan] Bluntson's lies to the court." *Id.*

To the extent McKinney argues his incarceration constitutes a "fundamental miscarriage of justice" because he is "actually innocent," such that he should benefit from the equitable exception to the AEDPA statute of limitations set forth in McQuiggin v. Perkins, 569 U.S. 383 (2013), this argument should be rejected. In McQuiggin, the U.S. Supreme Court held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" even when the AEDPA time has expired. 569 U.S. at 386. The Court cautioned, however, that "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)); see Gore v. Crews, 720 F.3d 811, 817 (11th Cir. 2013) (explaining U.S. Supreme Court "has not recognized any equitable exceptions to the statutory

bars on habeas petitions when the petitioner does not make a 'credible showing' of actual innocence" and the Court's "most recent decision on the matter, McQuiggin, reaffirmed that principle, holding that there is an 'equitable exception' to the statute of limitations applicable to habeas claims, 28 U.S.C. § 2244(d), but only when the petitioner presents new evidence that 'shows it is more likely than not that no reasonable juror would have convicted the petitioner'"). "To be credible, such a claim requires a petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324; *see* McQuiggin, 569 U.S. at 401 ("We stress once again that the Schlup standard is demanding. The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" (quoting Schlup, 513 U.S. at 316)).

Here, McKinney has not supported his claim that he is "actually innocent" with any evidence, much less new reliable evidence as required. *See* ECF No. 1 at 18-19. To the extent McKinney, in support of his claim, relies on his argument that "the State built [the] entire case off [Jonathan]

Bluntson's lies to the court," ECF No. 1 at 19, this appears to be the same "newly discovered evidence" claim presented to the state post-conviction trial court, and as Ground 4 in his § 2254 petition, and should be rejected. In particular, as Respondent indicates, in Ground 10 of his second amended Rule 3.850 motion, McKinney alleged newly discovered evidence in the form of a sworn affidavit dated May 9, 2008, from Bluntson, the State's primary witness, that he "gave false and incorrect testimony" at trial in August 2003. Ex. U at 132, 124-27; *see* ECF No. 10 at 11. Bluntson was McKinney's cellmate. Ex. U at 260.

The state post-conviction trial court rejected McKinney's claim, in its April 2010 order, making the following findings:

> The Court heard evidence regarding this claim at the evidentiary hearing held in this cause. Four witnesses testified regarding the recantation: 1) Defendant's original trial counsel, 2) Defendant himself, 3) Defendant's cousin, and 4) the recanting witness, Jonathan Bluntson.
>
> Trial counsel testified at evidentiary hearing that he and Bluntson had spoken on the telephone in May 2008. At that time, Bluntson had told counsel that he had lied at trial regarding Defendant's involvement in the murder. Counsel testified that Bluntson had said that Defendant had neve admitted to helping to murder anyone. Counsel also testified that Bluntson had acted concerned about the statute of limitations for a charge of perjury.
>
> Defendant testified regarding Bluntson's recantation as well. Defendant testified that he and Bluntson had spoken on the telephone while Defendant was imprisoned regarding Bluntson's change in testimony. Defendant testified that Bluntson told

Defendant and his family that he wanted to make it right and recant his trial testimony implicating Defendant. Postconviction counsel also introduced into evidence the recording of the telephone conversation between Bluntson and Defendant. On that call, Bluntson told Defendant that he was concerned about the statute of limitations regarding perjury and that he would do what he could to help Defendant.

Bluntson also executed an affidavit conceding that everything to which he had testified at trial was false, that he had been pressured by the State to give false testimony at trial, and that Defendant had never confessed involvement in the murder of Pospisil. Bluntson was then subpoenaed to the Office of the State Attorney to give a statement. In the ensuing statement, Bluntson testified that his affidavit was false and that he had been pressured into writing the affidavit by Defendant's family.

Finally, Bluntson testified at the evidentiary hearing. Bluntson testified that he had testified truthfully at trial and before the grand jury. He additionally affirmed that he told the prosecutor in his statement merely 12 days after the writing of the affidavit that he had been pressured into writing the affidavit.

The Court here concludes that the testimony of Witness Bluntson is indeed unreliable, making it difficult to know what statements from him are true and what statements are false. It is the duty of this Court to deny a new trial unless this Court is satisfied that Bluntson was telling the truth to Defendant, Defendant's family, and trial counsel in his out-of-court statements and subsequent affidavit and, thus, that he was lying before the grand jury, at trial, in his sworn statement to the assistant state attorney, and at evidentiary hearing. This Court is not satisfied that Bluntson's unsworn statements and written affidavit are more reliable than his sworn statements.

In a case such as this one where the Court cannot determine which of the witness's conflicting statements are true, the Supreme Court of Florida has mandated that no new trial be granted. Furthermore, the out-of-court statements could not be used as substantive evidence at a new trial; therefore, the Court

> does not find that there is a "reasonable probability" that the statements would produce a different result upon retrial. Therefore, this Court denies Defendant relief on this ground.

*Id.* at 285-88 (footnotes omitted). On appeal, the First DCA affirmed the order without a written opinion. Ex. X. The First DCA's summary affirmance is an adjudication on the merits entitled to deference under 28 U.S.C. § 2254(d). *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

A review of the record supports the state courts' determination. Ex. U at 132; 182-35 (evidentiary hearing testimony of McKinney's trial counsel), 189-98 (evidentiary hearing testimony of Bluntson), 210-15 (evidentiary hearing testimony of McKinney); 228-56 (counsels' arguments and transcript of recorded call from McKinney to Bluntson, from conclusion of evidentiary hearing held January 5, 2010). *See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning."). *See also, e.g.,* Green v. State, 975

So. 2d 1090, 1100-01 (Fla. 2008) (affirming denial of new evidence claim and explaining witness's "out of court recantation would not likely produce an acquittal on retrial because it would only serve as impeachment to his original testimony" and, further, appellate court "generally defer[s] to the trial judge regarding these credibility determinations); Bell v. State, 90 So. 2d 704, 705 ("[R]ecanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." (quoting Henderson v. State, 185 So. 625, 630 (Fla. 1938))). The state courts' rulings are entitled to deference.

Because McKinney has not supported his claim that he is "actually innocent" with any evidence, much less new reliable evidence as required, he has not opened the "gateway" described in McQuiggin and other cases, such that his § 2254 claims may be considered on the merits. His § 2254 petition should be dismissed as untimely.

## Conclusion

Accordingly, it is respectfully **RECOMMENDED** that Respondent's motion to dismiss, ECF No. 10, be **GRANTED**, and Petitioner McKinney's § 2254 petition, ECF No. 1, be **DISMISSED as untimely**.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. See Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise

entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that Respondent's motion to dismiss (ECF No. 10) be **GRANTED** and the § 2254 petition (ECF No. 1) be **DISMISSED as untimely.** It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 18, 2020.

        S/ Martin A. Fitzpatrick
        **MARTIN A. FITZPATRICK**
        **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**